IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| JACQUELINE RUSSOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13-CV-6057-SJ-SSA-DGK |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION**

This action seeks judicial review of the Commissioner of Social Security's decision denying Plaintiff Jacqueline Russom's applications for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had multiple severe impairments, but retained the residual functional capacity ("RFC") to perform work as a lens inserter, dowel inspector, and touchup screen inspector.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

**Procedural and Factual Background**

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary. Plaintiff filed the pending applications on December 13, 2010, alleging a disability onset date of March 9, 2009. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. On May 23, 2012 the ALJ held a hearing and on June 15, 2012, the ALJ issued a decision finding Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review on March 1, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Plaintiff argues that the ALJ erred by: (1) failing to include Plaintiff's severe mental impairments and their functional restrictions in her RFC formulation; and (2) posing a defective hypothetical question to the vocational expert ("VE"). These arguments are without merit.

### I. The ALJ properly incorporated Plaintiff's mental impairments into her RFC formulation.

First, the ALJ's RFC formulation properly accounted for Plaintiff's mental impairments. The ALJ discussed at length how Plaintiff suffered from a mental impairment but that it was not as severe as diagnosed by John T. Bopp, Ph.D ("Dr. Bopp"). R. at 13 (citing R. at 266–67). The ALJ then thoroughly discussed how Plaintiff's mental impairments affected her ability to work. R. at 15–16. For example, the ALJ discussed how Plaintiff's borderline intellectual functioning[2] precluded her from performing complex or detailed tasks, limitations which the ALJ then incorporated into the RFC formulation. R. at 14–15.

However, the ALJ explicitly chose not to incorporate several alleged mental limitations, primarily because the ALJ had "serious questions about [Plaintiff's] credibility in this case." R. at 16. For instance, she noted that Barbara Markway, Ph.D ("Dr. Markway") found that Plaintiff was exaggerating her mental problems. *Id.* (citing R. at 264). The ALJ also noted that Plaintiff appeared to be able to function relatively well on a daily basis, in contradiction to her subjective complaints. *Id.* (citing R. at 218, 264). Because the ALJ incorporated the mental limitations she did find into Plaintiff's RFC, her first argument fails.

---

[2] Borderline intellectual functioning is a categorization of intelligence diagnosed in individuals who have an IQ score between 71 and 84. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 740 (4th ed. rev. 2000).

3

## II. The ALJ posed a proper hypothetical question to the VE.

Second, Plaintiff challenges the hypothetical question asked of the VE at Plaintiff's hearing. Specifically, the ALJ asked:

> Assume an individual who . . . should never be expected to understand, remember or carry out detailed instructions. The job duties should be capable of being learned by demonstration, on-the-job training, if you will, with no reading required. . . . Are there jobs in the region or in the nation that such a person could perform?

R. at 39–40. Plaintiff argues that this hypothetical question "is defective because it does not include Plaintiff's mental impairments and the limitations that these nonexertional impairments place on her" (Doc. 19, at 25).

To constitute substantial evidence at Step Five, a VE's testimony must be based on a hypothetical question accounting for all of the claimant's proven impairments. *Buckner*, 646 F.3d at 560–61. The question does not need to "use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments." *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996) (affirming the use of a hypothetical question that incorporated the symptoms of patellofemoral chondromalacia without using that term). Because the ALJ need only account for the claimant's proven impairments, she may exclude discredited subjective complaints if the ALJ had reason to discredit them. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). With regard to borderline intellectual functioning, an ALJ can adequately account for that condition in a question by limiting the hypothetical individual to performing simple, routine, and repetitive work. *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 365–66 (8th Cir. 2007).

Here, the only mental deficit the ALJ found was borderline intellectual functioning, per past IQ test scores. R. at 13, 16, 266, 285 (showing IQ test scores between 68 and 86). Given these test scores, the ALJ found that Plaintiff could not perform complex or detailed tasks but

4

noted that "no doctor of record has indicated that [Plaintiff's] mental or physical problems are overwhelming or preclude all work." R. at 15, 16. The ALJ then instructed the VE at the hearing to consider only jobs with simple instructions and learning by demonstration. The ALJ's hypothetical question incorporated all of these relatively mild mental limitations and was thus proper. *See Hillier*, 486 F.3d at 365–66.

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date: June 30, 2014                         /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT